UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONIA R. HOLMES,

    Plaintiff,                   CIVIL ACTION NO. 05 CV 73174 DT

v.                           DISTRICT JUDGE VICTORIA A. ROBERTS

JO ANNE B. BARNHART,        MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

    This Supplemental Security Income (SSI) case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated herein, the court recommends that the Commissioner's motion be granted and that plaintiff's motion be denied.[1]

**II. Background**

    On December 28, 2001, plaintiff filed an application for SSI, alleging that she was disabled due to hepatitis, a damaged esophagus, ovarian problems, fibrocystic breast disease, and

---

[1]Plaintiff is proceeding in this matter *pro se*.

a bad left shoulder joint, with an onset date of March 15, 1997.[2] (Tr. 49-50, 132) Plaintiff was 52 years of age when she filed the application. She has a high school education and, as the Administrative Law Judge (ALJ) noted in his decision, "[s]he has no vocationally relevant past work experience." (Tr. 14)

The Social Security Administration (SSA) denied plaintiff's claim on May 10, 2002. (Tr. 22-27) Plaintiff then requested a hearing before an ALJ. (Tr. 31) The hearing was held on May 10, 2004 before ALJ Joseph Brezina. (Tr. 373-93)

On January 24, 2005, the ALJ issued a decision denying plaintiff's claim. (Tr. 10-20) The ALJ determined that plaintiff suffered from fibrocystic breast disease, left shoulder osteoarthritis, hepatitis C, esophageal stricture secondary to gastroesophageal reflux disease, and an ovarian cyst with fibroid tumors. Further, the ALJ determined that plaintiff's impairments were "severe" withing the meaning of 20 C.F.R. § 416.920(a)(4)(ii), but that she did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations. (Tr. 21) Based upon the hearing testimony of a vocational expert (VE), the ALJ concluded that plaintiff had the residual functional capacity (RFC) to perform a "limited range of medium work activity" notwithstanding her impairments and that there were a substantial number of jobs in the national economy that she was capable of performing.[3]

---

[2]Plaintiff later amended her onset date to December 28, 2001.

[3]"Medium" work is defined in 20 C.F.R. § 416.967(b) as follows:
Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that she can also do sedentary and light work.

Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act.

Plaintiff subsequently filed a request for review of the ALJ's decision with the Appeals Council. (Tr. 7-9)  The Council denied the request on June 13, 2005. (Tr. 4-6)  The ALJ's decision thus became the final determination of the Commissioner.

On August 16, 2005, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  As noted above, the matter comes before the court on the parties' cross-motions for summary judgment.  Plaintiff submitted a letter, rather than a formal motion for summary judgment, in which she contends, generally, that the ALJ erred in concluding that she is not disabled.  The Commissioner contends that the ALJ's decision is supported by substantial evidence and should thus be affirmed.

### III.  Legal Standards

#### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

> economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work

42 U.S.C. § 1382c(a)(3)(C)(I).  The claimant bears of the burden of proving that she is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate SSI claims.  See 20 C.F.R. § 416.920.  In Foster, Id. at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment."  A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment. If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.[4]

**B.  Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party,

---

[4]Foster involved a claim for Social Security disability benefits, not SSI, as in this case. However, the analysis is the same regardless of whether the claim in question is one for disability benefits or SSI.

-4-

> irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Further, " the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

**IV.  Analysis**

The ALJ rendered findings favorable to plaintiff at the first, second, and fourth steps of the five-step sequential evaluation process, and the court, having reviewed the record in its entirety, agrees with the ALJ's step-three determination that the record does not demonstrate the existence of an impairment of listing-level severity.  The court will thus focus its attention on the ALJ's step-five determination.

The ALJ based that determination on the testimony of the VE in response to a hypothetical question containing the ALJ's RFC findings.  The exchange between the ALJ and the VE is set forth below:

**ALJ**: Ms. Turecki, if I were to ask you to assume a hypothetical individual of the claimant's age, education and lack of past work experience who would require work which is unskilled. That individual would retain the ability to lift or carry a maximum of 25 pounds frequently and up to 50 pounds occasionally. And by occasionally I mean from very little up to one-third of an eight-hour workday. That individual could stand or walk with normal breaks for a total of six hours in an eight-hour workday. That individual could sit with normal breaks for a total of six hours in an eight-hour workday. That individual could perform pushing or pulling motions with her right upper and both lower extremities with the aforementioned weight restrictions. That individual should avoid overhead reaching with her left upper extremity. That individual would be capable of performing activities requiring bilateral manual dexterity for both gross and fine manipulation with reaching and handling. That individual should avoid unprotected heights, moving machinery and vibrations. That individual could perform each of the following postural activities occasionally. Those activities would be climbing, balancing, stooping, kneeling, crouching or crawling. Do you need any clarification on that hypothetical, ma'am?

**VE**: No, your honor.

**ALJ**: Would that hypothetical individual with those limitations be capable of performing any work activity at any level of exertion in competitive employment on a sustained basis, ma'am?

**VE**: Yes, your honor.

**ALJ**: Would you please identify some various samples of different types of jobs that hypothetical individual could perform, ma'am?

**VE**: Yes. The position of porter which is medium and unskilled. The numbers for southeastern Michigan which is a six-county radius is 4,400. Position of packer, again medium and unskilled, the number in southeastern Michigan is 22,000. Position of inspector/checker at the light level, unskilled, 18,000. Position of carwash attendant which is again light and unskilled, 5,000. Surveillance system monitor, 10,000, sedentary, unskilled. Information clerk, again sedentary and unskilled, 5,700. Parking lot attendant, again sedentary and unskilled....1,000.

(Tr. 390-91) Based on the foregoing testimony, the ALJ concluded that there were a significant number of jobs in the regional economy that plaintiff was capable of performing and, therefore, that she was not disabled within the meaning of the Social Security Act. (Tr. 20)

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's testimony cannot support such a finding. The ALJ is not required to specifically refer to a claimant's medical conditions in the hypothetical. Webb v. Commissioner of Social Security, 368 F.3d 629 (6th Cir. 2004). Further, the ALJ is not required to include in a hypothetical unsubstantiated allegations and complaints. The hypothetical "need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence." Delgado v. Commissioner of Social Security, 30 Fed.Appx. 542, 548 (6th Cir. 2002).

While the evidence in the record plainly establishes that plaintiff suffers from a number of "severe" impairments, as that term is defined in 20 C.F.R. § 416.920(a)(4)(ii), the court finds that the ALJ reasonably accounted for those impairments in the hypothetical he posed to the VE and that the evidence does not establish the existence of a condition or combination of conditions that would preclude all work activity. With respect to plaintiff's left shoulder impairment, the ALJ included in the hypothetical limitations as to the amount of weight plaintiff could lift, carry,

push, or pull, and a restriction of no overhead reaching.  These restrictions are consistent with the findings set forth in the Physical Residual Functional Capacity Assessment (PRFCA) form filled out by a consulting physician (whose name is illegible).  The consultant indicated in that form that plaintiff could occasionally lift or carry up to 50 pounds and frequently lift or carry up to 25 pounds, which is consistent with the ability to perform "medium" work.  (Tr. 309)  The consultant further indicated that plaintiff should be limited to occasional overhead lifting with her left arm.  (Tr. 311)  The ALJ went beyond that recommendation and restricted plaintiff to no overhead lifting.  The record shows that plaintiff underwent physical therapy for her shoulder and that she continued to have difficulty with that condition despite such therapy, but the records do not indicate that plaintiff's therapist placed her on any restrictions as to the amount of weight she could lift or carry or that she was advised to avoid certain activities or movements as a result of her condition.  Given the lack of concrete restrictions in those records, and a similar lack of such restrictions elsewhere in the medical record, the ALJ's reliance on the PRFCA form in assessing plaintiff's shoulder impairment was entirely reasonable.  Further, Dr. Cynthia Shelby-Lane, who performed a consultative examination of plaintiff on March 30, 2002, characterized plaintiff's left shoulder discomfort as "minimal" and found that her left shoulder range of motion was only slightly restricted.  (Tr. 238-42)  In sum, the court concludes, based upon a review of the record as a whole, that the ALJ's properly accommodated plaintiff's shoulder impairment in the hypothetical he posed to the VE.

As for the remainder of plaintiff's impairments, while they may be severe, the evidence in the record supports the ALJ's determination that they do not prevent plaintiff from engaging in

all work activity.  With respect to her esophageal stricture, on February 10, 2003, plaintiff reported to her physician(s) at Wayne State University's Department of Internal Medicine, Division of Gastroenterology, that she was asymptomatic, and her physicians described the condition "stable."  (Tr. 282)  In an April 7, 2003 report, plaintiff was again described as "asymptomatic" with respect to her esophageal condition.  (Tr. 286)  There is otherwise nothing in the record indicating that plaintiff's esophageal stricture would interfere with her ability to perform work-related activities.  The same may be said of plaintiff's fibrocystic breast disease and ovarian cyst with fibroid tumors.  There is simply no medical evidence in the record indicating that these conditions affect plaintiff's ability to engage in work activity.

Plaintiff testified at the hearing that she was unable to work primarily because of the hepatitis C virus.  (Tr. 380)  The record plainly establishes that plaintiff suffers from hepatitis C condition and that the condition is "severe" within the meaning of 20 C.F.R. § 416.920(a)(4)(ii).  However, as with her esophageal condition, fibrocystic breast disease, and ovarian cyst with fibroid tumors, it does not appear from the record that the condition substantially interferes with plaintiff's ability to engage in work activities.

Plaintiff stated the following at the hearing regarding the nature and severity of her condition:

> All right.  Number one I had drastic weight loss because of the medication.  Okay.  Because of the hepatitis C virus, flu-like symptoms, fevers, chills, vomiting, the medication caused me to have hair loss, hair thinning.  The medications I was taking effected [sic] my osteoarthritis.  You have side effects.  You have – I have fatigue, a weakness, nausea, dizzy spells, maybe because its an experimental medication.  It's experimental and it's a toxic

>     medication. So you can have dangerous and detrimental side
>     effects from that and I did have them.

(Tr. 381) Plaintiff further testified that she had to suspend her hepatitis C drug treatment for a period of six months "because the medication was toxic and I became extremely sick from it." (Tr. 380-81)

Taken as true, the above-cited testimony may well support plaintiff's contention that she is disabled. However, the ALJ found that plaintiff's testimony was not fully credible, and the court is not inclined to disturb the ALJ's credibility determination, which is entitled to considerable deference, in light of the evidence in the record. See Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997)("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility"). Contrary to plaintiff's testimony, the treatment notes prepared by her treating physicians at Wayne State University show indicate that plaintiff's condition was well-controlled and that she was suffering no significant symptoms as a result of her illness. For instance, on February 10, 2003, plaintiff complained of feeling tired and fatigued, but otherwise reported that she felt good and that her appetite was good. The physicians also reported that plaintiff's weight was stable and that other than some nausea, she was experiencing no other significant problems. (Tr. 282) On April 7, 2003, her physician noted that she was generally "asymptomatic," and that she was doing fine other than having occasional nausea. (Tr. 285-86) On May 6, 2003, plaintiff reported having a decreased appetite, but no other problems. (Tr. 290) Further, on December 8, 2003, her

physician noted that plaintiff "does have her usual symptoms such as headaches, fatigue, mild pruritus and some discomfort to the right upper quadrant, but she indicates that this is manageable and she is doing okay with it." (Tr. 322) In addition, there is no mention in these treatment notes that plaintiff's medication was discontinued due to severe side effects, as she testified. Rather, the notes indicate that her treatment was discontinued due to her noncompliance with the treatment regimen. (Tr. 322, 326) In light of the foregoing, and considering the record as a whole, the court cannot say that the ALJ erred in concluding that plaintiff's allegations regarding her limitations were not fully credible.

In sum, the court finds that the ALJ reasonably accounted for plaintiff's shoulder impairment in the hypothetical he posed to the VE and that the hypothetical otherwise painted a reasonably accurate picture of the nature and extent of plaintiff's physical limitations. Accordingly, the VE's testimony constitutes substantial evidence in support of the ALJ's determination that plaintiff is not disabled. Varley, 820 F.2d at 779.

Finally, plaintiff asserts in her motion for summary judgment that SSA personnel deliberately removed critical documentation from her claim file and have thereby impaired her ability to challenge the ALJ's decision in this proceeding. Plaintiff has failed to present the court with any proof to substantiate this allegation and, in any event, she has not specifically identified what documents she believes have been removed from her file and how any such documents might support her claim for SSI benefits. Accordingly, the court finds plaintiff's claim regarding this malfeasance to be lacking in merit.

**V. Conclusion**

For the reasons set forth above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's cross-motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

  s/Virginia M. Morgan
VIRGINIA M. MORGAN
Dated: January 24, 2006    UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONIA R. HOLMES,

       Plaintiff,                    CIVIL ACTION NO. 05 CV 73174 DT

       v.                            DISTRICT JUDGE VICTORIA A. ROBERTS

JO ANNE B. BARNHART,           MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon Sonia R. Holmes, counsel of record, and the Social Security Administration via the Court's ECF System and/or U. S. Mail on January 24, 2006.

                                                s/J Hernandez
                                                Case Manager to
                                                Magistrate Judge Virginia M. Morgan